**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **JASIR MASSEY-CAMPBELL,** | : | **CIVIL ACTION** |
| *Plaintiff, pro se,* | : | |
| | : | **NO. 24-4146** |
| **v.** | : | |
| | : | |
| **BRIDGECREST ACCEPTANCE** | : | |
| **CORPORATION,** *et al.,* | : | |
| *Defendants.* | : | |

NITZA I. QUIÑONES ALEJANDRO, J.                                    OCTOBER 1, 2025

# MEMORANDUM OPINION

## INTRODUCTION

Plaintiff filed a *pro se* amended complaint against Defendants Bridgecrest Credit Company ("Bridgecrest") and Daniel Gaudreau ("Gaudreau") (collectively, "Defendants"), asserting claims for violations of the Fair Debt Collection Practices Act ("FDCPA") and the Fair Credit Reporting Act ("FCRA"), breach of contract, and for declaratory judgment. (ECF 11).

Before this Court is Defendants' motion to dismiss Plaintiff's amended complaint, (ECF 13), and Plaintiff's opposition thereto, (ECF 15). For the reasons set forth, the motion to dismiss is granted.

## LEGAL STANDARD

When considering a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure ("Rule") 12(b)(6), a court "must accept all of the complaint's well-pleaded facts as true but may disregard any legal conclusions." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210–11 (3d Cir. 2009). The court must determine "whether the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" *Id.* at 211 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)). The complaint must do more than merely allege the plaintiff's

entitlement to relief; it must "show such an entitlement with its facts." *Id.* (internal quotation marks and citations omitted). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct the complaint has alleged – but it has not 'shown' – 'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements do not suffice." *Id.*

To survive a motion to dismiss under Rule 12(b)(6), a plaintiff must allege facts sufficient to "nudge [his or her] claims across the line from conceivable to plausible." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008) (alteration in original) (quoting *Twombly*, 550 U.S. at 570). "Along with those facts, [a court] may also consider exhibits attached to the complaint, matters of public record, and documents integral to or explicitly relied upon in the complaint." *Davis v. Wells Fargo*, 824 F.3d 333, 351 (3d Cir. 2016).

The United States Court of Appeals for the Third Circuit "has held that authentication under the Federal Rules of Evidence requires only a 'foundation from which a fact-finder could legitimately infer that the evidence is what its proponent claims it to be.'" *Bouriez v. Carnegie Mellon Univ.*, 2005 WL 2106582, at *5 (W.D. Pa. Aug. 26, 2005) (quoting *In re Japanese Electronic Prods. Antitrust Litig.,* 723 F.2d 238, 285 (3d Cir.1983), *rev'd on other grounds,* 475 U.S. 574 (1986)) (internal quotation marks omitted). *See also* Fed. R. Evid. 901(a). "Further, the Federal Rules of Evidence allow authentication by unlimited means, including testimony of witness with knowledge, or based upon distinctive characteristics such as 'appearance, contents,

substance, internal patterns, or other distinctive characteristics, taken in conjunction with circumstances.'" *Bouriez*, 2005 WL 2106582, at *5 (quoting Fed. R. Evid. 901(b)).

Pursuant to Rule 12(b)(2), a defendant may also move to dismiss a claim for lack of personal jurisdiction. Fed. R. Civ. P. 12(b)(2). Once a defendant has raised a lack of jurisdiction defense, the burden shifts to the plaintiff to present a *prima facie* case establishing jurisdiction over the non-resident defendant in the forum. *Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 368 (3d Cir. 2002); *see also Miller Yacht Sales, Inc., v. Smith*, 384 F.3d 93, 97 (3d Cir. 2004) ("[W]hen the court does not hold an evidentiary hearing on the motion to dismiss, the plaintiff need only establish a *prima facie* case of personal jurisdiction . . . ."). The plaintiff has the burden to show, with reasonable particularity, enough contact between the defendant and the forum state to support the exercise of personal jurisdiction by the forum state. *See Mellon Bank v. Farino*, 960 F.2d 1217, 1223 (3d Cir. 1992) (internal citations omitted); *see also Action Mfg. Co. v. Simon Wrecking Co.*, 375 F. Supp. 2d 411, 418 (E.D. Pa. 2005) ("In order to establish a *prima facie* case, the plaintiff must present specific facts that would allow the court to exercise jurisdiction over the defendant.").

This Court is aware that Plaintiff is proceeding *pro se*. When considering a motion to dismiss, this Court will accept the *facts* alleged in the *pro se* complaint, as true, draw all reasonable inferences in the plaintiff's favor, and ask only whether the complaint, liberally construed, contains facts sufficient to state a plausible claim. *Shorter v. United States*, 12 F.4th 366, 374 (3d Cir. 2021) *abrogation on other grounds recognized by Fisher v. Hollingsworth*, 115 F.4th 197 (3d Cir. 2024). However, conclusory allegations do not suffice. *Iqbal*, 556 U.S. at 678. As Plaintiff is proceeding *pro se*, his allegations are construed liberally. *Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021) (citing *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244-45 (3d Cir. 2013)). "This means we remain flexible, especially 'when dealing with imprisoned *pro se* litigants[.]'" *Id.* (quoting

*Mala*, 704 F. 3d at 244). The Court will "apply the relevant legal principle even when the complaint has failed to name it." *Id.* However, "'*pro se* litigants still must allege sufficient facts in their complaints to support a claim.'" *Vogt*, 8 F. 4th at 185 (quoting *Mala*, 704 F. 3d at 245).

## SUMMARY OF FACTS[1]

The facts in this matter are straightforward; *to wit:*

On June 2, 2022, Plaintiff Jasir Massey-Campbell ("Plaintiff") financed the purchase of a used vehicle from Carvana, LLC, and signed a retail installment contract (commonly referred to as a "RISC Agreement") to finance the purchase. (*See* ECF 13-2). Plaintiff agreed to make 71 monthly payments on the loan.

Carvana transferred Plaintiff's loan account to Bridgecrest, Carvana's third party loan servicer. Bridgecrest was responsible for managing Plaintiff's payments, credit reporting, collection activities, repossession proceedings, changes in residence, name changes and refinancing or paying off the loan.

Sometime in 2024, Plaintiff stopped paying his monthly installments. Plaintiff does not dispute that he stopped paying on the vehicle's loan because, in his view, Defendant Bridgecrest was not a party to the RISC Agreement and was not entitled to payment.

The RISC Agreement explicitly allows for the assignment of Carvana's loan. On behalf of Defendants, Laura K. Conroy, Esquire, authenticated a copy of the RISC Agreement Plaintiff entered into with Carvana, LLC. (*See* ECF 13-2). Specifically, the language in the RISC Agreement provides, *in part*: **The Seller may assign this Contract and retain its right to receive a part of the Finance Charge."**[2] (ECF 13-2 at p. 7). Plaintiff's signature appears below this written notice.

---

[1]    Plaintiff's "Statement of Facts" in the amended complaint, (ECF 11), consists primarily of a recitation of definitions appearing in the Federal Rules of Evidence and federal statutes, (*see* ECF 11 at pp. 2-6), and the detailing of numerous letters and "notices" sent to Defendants in which Plaintiff proclaimed that he was not obligated to make payments to Bridgecrest pursuant to the RISC Agreement, (*see id.* at pp. 6-8). Conspicuously missing are facts which would allow this Court to determine whether Plaintiff was injured by Defendant Bridgecrest's servicing the loan he agreed to pay to Carvana, LLC. The facts noted were gleaned mostly from the motion to dismiss.

[2]    A Court may "consider exhibits attached to the complaint, matters of public record, and documents integral to or explicitly relied upon in the complaint." *Davis v. Wells Fargo*, 824 F.3d 333 351 (3d Cir.

(*Id.*).

**DISCUSSION**

As noted, Plaintiff's amended complaint asserts three counts:  a violation of the Fair Debt Collection Practices Act ("FDCPA") (at Count I); a violation of and the Fair Credit Reporting Act ("FCRA") (at Count II); and a breach of contract (at Count III).  However, the facts alleged in the amended complaint are insufficient to show that Plaintiff has a plausible claim for relief on any of these claims.  Further, Plaintiff's attempt to impugn the authenticity of the RISC Agreement to avoid dismissal, (*see* ECF 19), is insufficient to establish or support any claims asserted.  Each claim is addressed in turn.

---

2016).  Plaintiff's complaint relies upon the RISC Agreement, which governs the debt obligations Plaintiff avers he should not be held obligated to fulfill.  Accordingly, this Court considers the RISC Agreement in rendering its decision.  *See Mount v. Peruzzi of Langhorne LLC*, 2021 WL 3708714, at *1 n.1 (E.D. Pa. Aug. 20, 2021) ("[A] court may consider an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document.") (citation and internal quotation marks omitted).

*FDCPA Claim*[3]

To prevail on an FDCPA claim, a plaintiff must prove that: "(1) [he or] she is a consumer, (2) the defendant is a debt collector, (3) the defendant's challenged practice involves an attempt to collect a 'debt' as the Act defines it, and (4) the defendant has violated a provision of the FDCPA in attempting to collect the debt." *Berry v. ARS Nat'l Servs., Inc.*, 2015 WL 9315993, at *2 (E.D. Pa. Dec. 23, 2015). The FDCPA defines the term *debt collector* to explicitly exclude any person or entity which is servicing or collecting on a debt that "was not in default at the time it was obtained by such person." *See* 15 U.S.C. § 1692a(6)(F)(iii).

Here, Plaintiff's FDCPA claim is premised on an assertion that "Defendant Bridgecrest has violated the FDCPA by continuing to pursue collection activities on a disputed debt without providing verifiable evidence of the debt's validity." (ECF 11 at pp. 7-8). However, Plaintiff's amended complaint is void of any allegation that Bridgecrest attempted to collect on an unacknowledged debt owed by Plaintiff. Rather, Plaintiff's amended complaint simply catalogues the letters and notices he sent to Bridgecrest and, specifically, to its Chief Financial Officer, Daniel Gaudreau. Plaintiff appears not to understand Carava's business decision to contractually have Bridgecrest service the loan. The substance of Plaintiff's correspondence to Bridgecrest fails to establish a viable FDCPA claim.

As best discerned, the crux of Plaintiff's theory of liability appears in the Statement of Facts, Paragraph B in the amended complaint wherein Plaintiff indicates that "no consideration was given from Bridgecrest that would substantiate a valid contractual agreement" presumably with Carvana, LLC, the entity with which Plaintiff entered into the RISC Agreement. (ECF 11 at

---

[3]    This Court agrees with Bridgecrest that Count I is not brought against Defendant Gaudreau. In dismissing the count against Bridgecrest, no valid claim remains. (*See* ECF 13-1 at p. 11).

p. 6).  According to Plaintiff, any reporting or collection attempts by Bridgecrest are unlawful. (*See id.* at pp. 6-8).  Plaintiff is mistaken.

As set forth in the above summary of facts, Bridgecrest, as Carvana's loan servicer by way of a third-party contract, was servicing the vehicular loan owed by Plaintiff and held by Carvana through the signed RISC Agreement.  As such, Defendants argue that Bridgecrest is not a "debt collector" under the FDCPA.  (ECF 13-1 at 11-12).  This Court agrees.  As noted, the FDCPA defines *debt collector* to explicitly exclude any person or entity which is *servicing* or collecting on a debt that "was not in default at the time it was obtained by such person." (Emphasis added.)  *See* 15 U.S.C. § 1692a(6)(F)(iii).  As Defendants argue, there is no allegation in the amended complaint that at the time Bridgecrest commenced servicing the loan account, Plaintiff's debt was in default which is the definition of a "debt collector" liable under the FDCPA.  (*See* ECF 13-1 at pp. 12-13).  Because Bridgecrest is not a debt collector, as a matter of law, the FDCPA claim is dismissed.

*FCRA Claim*[4]

To prevail on an FCRA claim, a plaintiff must prove that a furnisher of credit information failed to properly address a disputed debt.  *See Seamans v. Temple Univ.*, 744 F.3d 853, 866 (3d Cir. 2014).  As best discerned, Plaintiff appears to allege that Bridgecrest "reported information regarding" a "disputed debt to consumer reporting agencies" in violation of 15 U.S.C. § 1681b, ("Permissible purposes of consumer reports").  However, this Court finds that Plaintiff has not sufficiently alleged such a violation.  Under the reporting provisions under the FCRA:

> [a] requirement is triggered when consumers contact a consumer reporting agency to dispute the accuracy of information in their credit file under § 1681i(a)(1)(A) of the FCRA. The consumer reporting agency is required to send notice of the dispute to any person who provided any item of information in dispute – that is, to

---

[4]    This Court agrees that Count II is not brought against Defendant Gaudreau and that in dismissing the claim against Bridgecrest, no valid claim remains.  (*See* ECF 13-1 at p. 12).

> the furnisher of the information. 15 U.S.C. § 1681i(a)(2)(A). When a furnisher receives such notice from a consumer reporting agency, it must conduct an investigation with respect to the disputed information, modify, delete or block the reporting of any information found to be inaccurate, and report the results of the investigation to both the consumer reporting agency that provided notice and, if the investigation finds that the information is incomplete or inaccurate, to all other consumer reporting agencies to which the furnisher provided the disputed information.

*Kirtz v. Trans Union LLC*, 46 F.4th 159, 162 (3d Cir. 2022), *aff'd sub nom. Dep't of Agric. Rural Dev. Rural Hous. Serv. v. Kirtz*, 601 U.S. 42, (2024) (citations and internal quotation marks omitted).

In the amended complaint, Plaintiff does not allege that Bridgecrest is a furnisher of credit information and/or a failure by Bridgecrest to investigate and respond to a disputed debt. Even had he, Bridgecrest had no such responsibility as an entity which serviced a loan. Rather, Plaintiff only contests Bridgecrest's *ability* to service the RISC Agreement, a debt he incurred to purchase a used car. In sum, Plaintiff has failed to allege a disputed debt that was inappropriately addressed by Bridgecrest. Under the circumstances pled, Plaintiff has failed to plead sufficient facts or a cognizable claim for the relief sought under the FCRA. Accordingly, the FCRA claim is dismissed.

*Breach of Contract*

To state a breach of contract claim, a plaintiff must generally establish three elements: (1) "the existence of a contract, including its essential terms"; (2) "a breach of a duty imposed by the contract"; and (3) "resultant damages." *Gorski v. Smith*, 812 A.2d 683, 692 (Pa. Super. Ct. 2002) (citing *CoreStates Bank v. Cutillo*, 723 A.2d 1053, 1058 (Pa. Super. Ct. 1999)).

While parties may plead in the alternative, Plaintiff's breach of contract claim is likewise difficult to discern because it requires this Court to accept, on the one hand, that there is a contract

between Plaintiff and Bridgecrest and, on the other hand, that no contract exists.  This Court will not engage in such cognitive dissonance.  Additionally, Plaintiff does not, as the standard requires, plead that the contract he voluntarily entered was breached by Defendants, resulting in damages. Moreover, in accepting that the RISC Agreement exists and finding it has been authenticated by Attorney Conroy, this Court finds that the standard servicing of the RISC Agreement – regardless of Plaintiff's firm protestation of his obligation to pay Bridgecrest – does not amount to a cognizable breach of contract claim against any of the named Defendants.

This Court finds, based on the amended complaint, Attorney Conroy's authentication of the RISC Agreement, (*see* ECF 13-2), the undisputed facts that Plaintiff purchased a used vehicle and signed the RISC Agreement, (*see* ECF 11 at I.A),[5] and the referenced third-party loan servicing agreement between Carvana and Bridgecrest, that Plaintiff is not entitled to any of the relief he seeks.  Plaintiff  has failed to plead, nor is there any evidence, that the RISC Agreement was breached by Carvana, the entity from which he purchased the vehicle and with whom he signed a loan agreement.  The amended complaint lacks facts sufficient to show that Plaintiff is plausibly entitled to relief under a breach of contract theory.  Accordingly, Plaintiff's amended complaint as to this claim fails as a matter of law.  As a final noted, Plaintiff's misguided attempt to obscure the issue by refusing to acknowledge his signature on the RISC Agreement, (*see* ECF 11, 19), is unavailing.  The RISC Agreement has been properly authenticated.  Accordingly, the breach of contract claim is dismissed.

*Personal Jurisdiction over Defendant Gaudreau*

As noted, there is no specific claim against Defendant Gaudreau, though he is listed as a party Defendant.  Regardless, this Court further finds that Plaintiff has failed to allege facts

---

[5]    Plaintiff acknowledges that he owns the 2017 Ford Mustang bearing the VIN: 1FA6P8TH3H5256224, the vehicle subject to the RISC Agreement.

sufficient to establish its personal jurisdiction exists over Defendant Gaudreau.  Briefly, there are two types of personal jurisdiction:  general jurisdiction and specific jurisdiction.  *See Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414–15 & n.9 (1984).  Nothing in the amended complaint allows this Court to find it has general jurisdiction over Mr. Gaudreau, as neither his address nor state of residency is noted.  (ECF 11 at p. 2).  Likewise, there are no allegations in the amended complaint allowing this Court to determine whether specific jurisdiction exists.  To determine whether specific jurisdiction exists, courts look to three factors: (a) the defendant must have "purposefully directed [its] activities" at the forum.  *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985) (quotation marks omitted); (b), the litigation must "arise out of or relate to" at least one of those activities.  *Helicopteros*, 466 U.S. at 414; *Grimes v. Vitalink Commc'ns Corp.*, 17 F.3d 1553, 1559 (3d Cir.1994); and (c) if the prior two requirements are met, a court may consider whether the exercise of jurisdiction otherwise "comports with fair play and substantial justice."  *Burger King*, 471 U.S. at 476 (citation and internal quotation marks omitted).

Here, none of these factors are satisfied.  Plaintiff alleges that *he* "mailed multiple notices to Daniel Gaudreau," not that Mr. Gaudreau directed any activity toward him.  (ECF 11 at pp. 6-8).  There is no allegation that Mr. Gaudreau lives in the state of Pennsylvania or directed any of his activity to individuals or entities therein.  (*See generally id.*).  Based on the lack of information, this Court is unable to conclude whether it has either general or specific jurisdiction over Mr. Gaudreau.  For this independent reason, to the extent any claim is directed to Mr. Gaudreau, any such claim is dismissed.

**CONCLUSION**

For the reasons set forth, the Defendants' motion to dismiss is granted. An Order consistent with this Memorandum Opinion follows.

*NITZA I. QUIÑONES ALEJANDRO*, J.